COURT OF APPEALS
DECISION
DATED AND FILED

December 5, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1225**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017FA168

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE MARRIAGE OF:

DORRAINE M. MAWHINNEY,

   PETITIONER-RESPONDENT,

 V.

WADE A. HALLETT,

   RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Rock County: JOHN M. WOOD, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Graham and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Wade Hallett, pro se, appeals a judgment of divorce that divided marital property and awarded child support. Hallett contends that the circuit court erred by setting aside the parties' marital property agreement, in its property division determinations, and by setting child support based on Hallett's earning capacity. Hallett also contends that his counsel was ineffective during the divorce proceedings. For the reasons set forth below, we conclude that we have no basis to disturb any of the circuit court's decisions challenged in this appeal. We affirm.

¶2 Hallett and Dorraine Mawhinney were married in December 2009. Prior to the marriage, Hallett and Mawhinney entered into a limited marital property agreement. In February 2017, Hallett was arrested and charged with felony offenses. Hallett ultimately pled no contest to a single felony count of incest of a child by a stepparent and was sentenced to ten years of initial confinement and four years of extended supervision.

¶3 Mawhinney petitioned for divorce and moved to set aside the marital property agreement, arguing that the agreement was inequitable at the time of execution and at the time of divorce. The circuit court determined that the marital property agreement was inequitable at the time of divorce due to the unforeseeable change in circumstances of Hallett's arrest, conviction, and ten-year prison sentence and resulting loss of income. The court then divided the marital property, finding that, under the circumstances, an unequal division of property in Mawhinney's favor was warranted. The court ordered Hallett to pay child support based on his earning capacity prior to his incarceration, resulting in a monthly child support obligation of $1,548.83. The court ordered Hallett's property award liquidated and the funds placed in a segregated account to fund the child support

payments that Hallett would not be able to make during his incarceration. Hallett appeals.

¶4     We review a circuit court's decision as to the enforceability of a marital property agreement for an erroneous exercise of discretion. *See **Button v. Button***, 131 Wis. 2d 84, 99, 388 N.W.2d 546 (1986). The division of marital property and the award of child support are also committed to the circuit court's discretion. ***Hokin v. Hokin***, 231 Wis. 2d 184, 190, 605 N.W.2d 219 (Ct. App. 1999). We will affirm the circuit court's exercise of discretion "if it examined the relevant facts, applied the correct standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." ***Randall v. Randall***, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737. We will uphold the circuit court's factual findings unless those findings are clearly erroneous. ***Greene v. Hahn***, 2004 WI App 214, ¶9, 277 Wis. 2d 473, 689 N.W.2d 657.

*Marital Property Agreement*

¶5     Hallett argues that the circuit court should have upheld the marital property agreement because there is a statutory presumption that such agreements are enforceable, *see* WIS. STAT. § 767.61(3)(L),[1] and because the court found that the agreement was equitable at the time of its execution. He argues that the court improperly considered Hallett's no contest plea contrary to WIS. STAT. § 904.10,[2]

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] WISCONSIN STAT. § 904.10 provides, in relevant part: "Evidence of ... a plea of no contest ... is not admissible in any civil or criminal proceeding against the person who made the plea or offer or one liable for the person's conduct."

and improperly considered Hallett's loss of income as a waste of marital assets, citing *Long v. Long*, 196 Wis. 2d 691, 695-97, 539 N.W.2d 462 (Ct. App. 1995) ("[T]here is no Wisconsin law that holds a party's income to itself be property subject to division in a divorce.").[3]  We are not persuaded.

¶6      A marital property agreement must meet three requirements to be enforceable:  "each spouse has made fair and reasonable disclosure to the other of his or her financial status; each spouse has entered into the agreement voluntarily and freely; and the substantive provisions of the agreement dividing the property upon divorce are fair to each spouse."  *See Button*, 131 Wis. 2d at 89.  Even if a marital property agreement was equitable when it was entered into, it may be unfair and thus unenforceable at the time of divorce if there has been a significant change in circumstances such that the agreement no longer comports with the reasonable expectations of the parties.  *See id.* at 98-99.  The question is whether the parties were able to reasonably predict events such that the circumstances at the time of divorce are within a range of circumstances anticipated by the parties at the time they entered into the marital property agreement.  *Warren v. Warren*, 147 Wis. 2d 704, 708-09, 433 N.W.2d 295 (Ct. App. 1988).

¶7      Here, the circuit court determined that Hallett's conviction and sentence to prison, along with the associated significant loss of income and trauma

---

[3] Hallett also argues that the circuit court erred by delaying the divorce trial until after Hallett's sentencing in his criminal case.  So far as we can tell, Hallett is contending that, had the circuit court decided the property and child support issues prior to his plea and sentencing, the court would not have been able to consider the fact of Hallett's incarceration in making its decisions.  However, Hallett has not developed an argument as to why the scheduling of the divorce trial would entitle him to relief from the divorce judgment, and we do not consider this argument further.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we do not consider undeveloped arguments on appeal).

to Mawhinney and her children, were unforeseeable changes in circumstances that rendered the marital property agreement unfair at the time of divorce. The court did not admit evidence of Hallett's no contest plea against Hallett contrary to WIS. STAT. § 904.10. Rather, the court considered the facts of Hallett's conviction and sentence and the resulting loss of income and trauma to the family as the circumstances that existed at the time of divorce. Additionally, the court did not consider Hallett's lost income as property that was subject to division contrary to *Long*. Again, the court considered the fact of the lost income as part of the circumstances that existed at the time of the divorce. We conclude that the circuit court properly exercised its discretion in setting aside the marital property agreement.

*Property Division Determinations*

¶8     Hallett also contends that, after setting aside the marital property agreement, the circuit court erred in its property division.[4] He contends that the court failed to consider what Hallett asserts was undisputed evidence that certain property had been acquired by Hallett as gifts or inheritance and was therefore not subject to division. *See* WIS. STAT. § 767.61(2). However, the court specifically addressed Hallett's claims of gifted or inherited property. The court found that there was no credible evidence that any property was inherited, and there was no itemization or value as to any gifted property. Thus, according to the court, there were no inherited or gifted assets that the court could determine from the record

---

[4] Hallett also contends that the circuit court erred by failing to assign additional debt to Mawhinney. However, Hallett does not develop an argument as to why it was an erroneous exercise of the court's discretion not to assign that debt to Mawhinney, and we do not consider this undeveloped argument further. *See* **Pettit**, 171 Wis. 2d at 646-47 (we do not consider undeveloped arguments on appeal).

5

before it that could be excluded from the property division. Hallett does not present a developed argument challenging the circuit court's factual and credibility findings, and we discern no basis to disturb them. *See Greene*, 277 Wis. 2d 473, ¶9 (we uphold a circuit court's findings of fact unless those findings are clearly erroneous); *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 644, 340 N.W.2d 575 (Ct. App. 1983) (circuit court "'is the ultimate arbiter of the credibility of the witnesses'" (quoted source omitted)); *see also State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (this court cannot act as advocate for a party and will not consider undeveloped arguments).

¶9      Hallett contends that the circuit court erred by failing to properly appraise the value of two businesses awarded to Mawhinney, the St. Louis Antique Show and H&K Properties.[5]  However, the court made findings as to the value of each of the two businesses.  The court found that the value of the interest in H&K Properties was $43,680.  The court explained that it had not received any expert testimony or credible evidence as to the value of the St. Louis Antique Show, and determined that its value was $5,000.  Hallett has not provided any basis for this court to disturb the circuit court's findings.

¶10     Hallett argues that the circuit court failed to consider that Mawhinney improperly disposed of Hallett's personal property and unnecessarily disposed of household items and purchased new ones.[6]  However, the circuit court

---

[5] Hallett contends that the circuit court in its property division should have also considered the income generated from the businesses. However, the court considered the income from the businesses in determining Mawhinney's income.

[6] Hallett also argues that the undisputed testimony established that Mawhinney wasted marital asserts by mishandling the sale of another business, the Indianapolis Antique Show. However, the portions of the transcripts that Hallett cites in support of this argument do not establish that Mawhinney mishandled the sale of the business.

found that Hallett had authorized a power of attorney to act on his behalf, and that the power of attorney had made decisions as to taking possession of some items of Hallett's personal property and discarding others. The court found that there was no evidence that any specific items of Hallett's personal property were missing or that any item had been intentionally mishandled, and that Hallett had not provided evidence to support his valuation of clothing he claimed was improperly discarded. The court also found that, based on the trauma of the events surrounding the divorce, Mawhinney acted reasonably in disposing of household items and purchasing new ones for her and her children. We have no basis to disturb those findings.

¶11    Hallett also contends that the circuit court erred by deviating from the presumption of an equal division of property. *See* WIS. STAT. § 767.61(3) (court must start with the presumption that divisible property is to be divided equally upon divorce). Hallett argues again that the court improperly considered his no contest plea contrary to WIS. STAT. § 904.10, and also argues that the court improperly considered his marital misconduct, contrary to § 767.61(3), in deciding that an unequal division of property was warranted. He contends that the circuit court failed to provide a rational basis for deviating from the presumption of an equal property division. We are not persuaded.

¶12    A court may deviate from an equal division of marital property after considering the factors listed in WIS. STAT. § 767.61(3)(a)-(m). Here, the court properly considered the relevant statutory factors before dividing the parties' property unequally. The court considered that it had been a nine-year marriage, that Hallett brought more assets to the marriage than Mawhinney, and that there was no property that was not subject to division. *See* § 767.61(3)(a) to (c). The court considered that both parties had contributed to the marriage prior to Hallett's

arrest, but that Mawhinney had made significant contributions to managing the household after Hallett's arrest. *See* § 767.61(3)(d). The court also considered the parties' ages and health, including the emotional trauma to Mawhinney from the circumstances surrounding Hallett's arrest and conviction, Hallett's higher earning capacity, the need for Mawhinney to have a place to live with the parties' child, and the lack of a maintenance award. *See* § 767.61(3)(e), (g), (h), and (i). The court considered the other economic circumstances of the parties, noting the family's loss of Hallett's significant income, and the lack of any other comparable source of income for Mawhinney, who would be responsible for the expenses of the household, and the fact that Hallett would have his basic necessities met by the state during his incarceration. *See* § 767.61(3)(g) and (j).

¶13 As part of its analysis of the statutory factors, the circuit court also found that Hallett had wasted marital assets by entering a plea that led to his conviction, sentence, and loss of income. We need not consider whether this was error or whether Hallett's actions resulted in a "waste" of a "marital asset" because the circuit court's analysis described above is sufficient to affirm the court's property division order. Nonetheless, we note the following. The court explained that it found similarities between this case and **Dudas v. Dudas**, No. 2016AP326, unpublished slip op. (WI App Mar. 21, 2017) (voluntary and unreasonable acts leading to incarceration and resulting loss of income considered as waste of marital assets under statutory catch-all factor, WIS. STAT. § 767.61(3)(m)).[7] The

---

[7] Here, the circuit court considered Hallett's loss of income as waste of marital assets under WIS. STAT. § 767.61(3)(d), contributions of the party to the marriage. In **Dudas v. Dudas**, No. 2016AP326, unpublished slip op., ¶33 (WI App Mar. 21, 2017), the circuit court relied on the catch-all factor, § 767.61(3)(m). However, the **Dudas** court relied on **Anstutz v. Anstutz**, 112 Wis. 2d 10, 13, 331 N.W.2d 844 (Ct. App. 1983), for the proposition that waste of marital property can be considered in a property division upon divorce. *See **Dudas***, No. 2016AP326,

(continued)

court recognized that Dudas had been convicted following a jury trial, and that here Hallett had entered a no contest plea. The court found, however, that the cases were similar in that Hallett made a voluntary and unreasonable choice to enter a plea that led to his conviction, incarceration, and loss of income. We are not persuaded by Hallett's argument that the court therefore effectively admitted evidence of Hallett's no contest plea against Hallett contrary to WIS. STAT. § 904.10, or that the court considered Hallett's marital misconduct contrary to § 767.61(3). The court did not rely on the specific facts of the charges against Hallett, and thus did not consider Hallett's no contest plea as evidence that Hallett admitted to voluntary and unreasonable criminal conduct. Rather, the court considered Hallett's entering a plea that led to his loss of income as part of the court's analysis of the statutory factors for property division. Moreover, the court emphasized that the property division was not intended to punish Hallett for his conduct. The court stated that it intended the property division to be fair and equitable and to give due consideration to the factors under § 767.61(3). The court stated that it found that an unequal property division in favor of Mawhinney was fair and reasonable under the circumstances of the case, after consideration of the statutory factors under § 767.61(3). We discern no basis to disturb the circuit court's exercise of discretion.

*Child Support*

¶14    Next, Hallett contends that the circuit court erred by setting Hallett's child support obligation based on his earning capacity, rather than on his actual

---

¶33. In *Anstutz*, the court stated that a party's waste of marital assets may be considered in connection with a party's contribution to the marriage. *Anstutz*, 112 Wis. 2d at 13.

9

income while incarcerated. Hallett again argues that the court impermissibly considered Hallett's no contest plea contrary to WIS. STAT. § 904.10 in deciding to use Hallett's income capacity rather than actual income. He contends that the court should not have used his earning capacity instead of his actual income absent a finding that he purposefully reduced his income in disregard of his child support obligation, citing *Edwards v. Edwards*, 97 Wis. 2d 111, 119, 293 N.W.2d 160 (1980). Hallett also argues that the court erred by failing to consider the child's interests in setting child support. He argues that the court did not provide a rational basis for using earning capacity rather than actual income and therefore erroneously exercised its discretion. Again, we are not persuaded.

¶15 Under WIS. STAT. § 767.511(1)(a), the divorce court shall "[o]rder either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child." In *Modrow v. Modrow*, 2001 WI App 200, 247 Wis. 2d 889, 634 N.W.2d 852, we held that a parent's "incarceration is a valid factor for a family court to consider in arriving at an initial determination of child support because of the impact it has on the payor's employability due to what may be voluntary and unreasonable acts." *Id.*, ¶17. We further stated that "the court may consider whether the crime was of an intentional nature, its potential effect on the payor's future income, the assets of the payor, how the needs of the children will be met during the payor's incarceration and any other factors which the court deems relevant." *Id.* Hallett attempts to distinguish *Modrow* by contending that *Modrow* was a child support modification case and that Hallett entered a no contest plea, which he asserts could not be used as evidence against him under WIS. STAT. § 904.10. However, *Modrow* was not a child support modification case. As here, the issue was the initial determination of child support. *See Modrow*, 247 Wis. 2d 889, ¶11. Additionally, the circuit court here stated that it

was Hallett's decision to enter a no contest plea, not his criminal conduct, that was the unreasonable and voluntary act that reduced his income. The court specifically recognized that Hallett had not been convicted after a jury trial, and the court did not rely on any of the conduct alleged against Hallett in his criminal case. Again, the court did not consider Hallett's no contest plea as evidence that Hallett admitted to voluntary and unreasonable criminal conduct. Rather, as in **Modrow**, the court properly considered Hallett's voluntary and unreasonable act that led to his conviction and loss of income in its child support determination.

¶16    Along with the fact of Hallett's incarceration, in setting child support the court considered the loss of income to support the child and the need for continued support of the child. *See id.*, ¶17. The court therefore set child support based on Hallett's earning capacity, and then ordered Hallett's property award liquidated and placed in a segregated account to fund Hallett's child support payments during his incarceration. *See* WIS. STAT. § 767.61(4) (authorizing court to place portion of property award in a segregated account to fund the support of the child). We discern no erroneous exercise of the circuit court's discretion.

*Ineffective Assistance of Counsel*

¶17    Finally, Hallett contends that his trial counsel was ineffective. However, a litigant has no constitutional right to counsel in a civil matter. *See* ***Village of Big Bend v. Anderson***, 103 Wis. 2d 403, 405, 308 N.W.2d 887 (Ct. App. 1981). Accordingly, Hallett's claim that his trial counsel was ineffective does not entitle him to relief.

11

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.